Patrick M. Flatley
United States Bankruptcy Judge
**Dated: Tuesday, July 14, 2009 9:31:07 AM**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DAVID S. BARRETT | ) | Case No. 09-353 |
| | ) | |
| Debtor. | ) | Chapter 13 |

### MEMORANDUM OPINION

Before David S. Barrett (the "Debtor") filed his February 25, 2009 Chapter 13 bankruptcy petition, WesBanco Bank, Inc., had repossessed four of his motor vehicles. On March 31, 2009, the Debtor filed a motion for turnover of the four vehicles arguing that he needs them to operate his business so that he can make his proposed Chapter 13 plan payments. On April 10, 2009, WesBanco filed a motion for relief from the automatic stay to liquidate the repossessed collateral.

For the reasons stated herein, the court will grant the Debtor's motion for turnover, continue WesBanco's motion for relief from the automatic stay for 60 days to allow the Debtor an opportunity to perform under his proposed Chapter 13 plan, and grant WesBanco's request for adequate protection.

### I. BACKGROUND

Since 1989 the Debtor has been engaged in the business of asphalt paving and in hauling slag, asphalt, and demolition materials. In the fall of 2008, the Debtor testified that business was slow, and he experienced a lack of cash flow. As a result the Debtor fell behind on his loans with WesBanco.

The Debtor has three loans with Wesbanco. First, on January 9, 2006, the Debtor borrowed $280,000, maturing on April 9, 2012. The Debtor has failed to make any payments since September 30, 2008, and at the time the Debtor filed his February 25, 2009 Chapter 13 bankruptcy petition, the arrearage was $32,888. The monthly loan payment is $4,888.01.

Second, on November 30, 2006, the Debtor borrowed $31,590, maturing on November 30, 2009. The Debtor has failed to make any payments since October 31, 2009, and at the time the Debtor filed his bankruptcy petition, the arrearage amount was $5,106. The monthly loan payment is $986.86

Third, on January 18, 2009, the Debtor borrowed $52,335, maturing on March 18, 2011. The Debtor has failed to make any payments since October 1, 2008, and when he filed his bankruptcy petition the arrearage was $5,841. The monthly loan payment is $1,638.90.

All three loans made by WesBanco are cross-collateralized in five motor vehicles and two dump trailers that the Debtor uses in his business. Pre-petition, Wesbanco repossessed two 1996 Peterbilt trucks, a 1987 Mack truck, and a 1987 Chevy truck. The Debtor states that he needs all four trucks returned to him so that he can continue to operate his business and perform under his proposed Chapter 13 plan to repay his loans to WesBanco. The Debtor concedes that no equity exists in the trucks beyond the amount of WesBanco's secured debt, and, in fact, he seeks to strip down the amount of WesBanco's secured claim to the value of its collateral, which the Debtor contends is $66,500.

The Debtor testified that if the trucks are returned to him, he will be able to secure paving and hauling work as he has done in the past. The Debtor testified that a company recently offered to hire all of his trucks at a rate that would enable the Debtor to make a profit of about $500 per day, per truck.

## II. DISCUSSION

The Debtor requests an immediate return of the motor vehicles repossessed by WesBanco. WesBanco states that it is not willing to release the motor vehicles and seeks to obtain relief from the automatic stay of the Bankruptcy Code to complete its liquidation of them. In the event that the court orders a return of the vehicles, WesBanco contends that it is entitled to adequate protection payments from the Debtor pending the confirmation hearing on the Debtor's proposed Chapter 13 plan.

**A.    Motion for Turnover**

The Debtor asserts that he has made a request to WesBanco for it to return the four trucks it repossessed before he filed his Chapter 13 bankruptcy petition, but WesBanco has refused to honor his request.

2

When a debtor files a bankruptcy petition, an estate is created that consists of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  These legal and equitable interests include a debtor's right to regain possession of an automobile that was repossessed by the debtor's secured creditor before the filing of bankruptcy, and which remains in the possession of the secured creditor after the filing.  *E.g.*, W. Va. Code § 46-9-623(c) (allowing a debtor to redeem collateral repossessed by a secured creditor at any time before the secured party disposes of the collateral); *In re Moffett*, 356 F.3d 518, 522 (4th Cir. 2004) (holding that the redemption rights in § 9-623(c) of the Uniform Commercial Code "are unquestionably 'legal or equitable interests' of [the debtor] that are included in [the debtor's] bankruptcy estate.").

The automatic stay of 11 U.S.C. § 362(a)(3) prohibits a secured creditor from "exercising control over property of the estate."  A secured creditor exercises control over a debtor's right of redemption when it repossesses a motor vehicle before the filing of a bankruptcy petition and passively holds the vehicle after the filing of the petition.[1]  *E.g.*, *Thompson v. General Motors Acceptance Corp., LLC (In re Thompson)*, 566 B.R. 699 (7th Cir. 2009) ("[T]he act of passively holding onto an asset constitutes 'exercising control' over it, [and] such action violates § 362(a)(3) of the Bankruptcy Code."); *Knaus v. Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir. 1989) ("The failure [to turnover repossessed property], regardless of whether the original seizure was lawful, constitutes a prohibited attempt to 'exercise control over property of the estate'

---

[1]   In *Citizens Bank v. Strumpf*, 516 U.S. 16, 21 (1995), the Court held that an administrative hold on a debtor's bank account to preserve the creditor's right of setoff did not violate § 362(a)(3).  Importantly, however, the Court stated that this administrative hold was not an exercise of control over property of the estate prohibited by § 362(a)(3); rather, it was merely a refusal to perform a promise:

> Respondent's reliance on [§ 362(a)(3)] rests on the false premise that petitioner's administrative hold took something from respondent, or exercised dominion over property that belonged to respondent. That view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank. In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor, and petitioner's temporary refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise.

*Id.*

Consequently, *Strumpf* has no applicability to this case because WesBanco is exercising control over the Debtor's property; it is not refusing to perform a promise.

in violation of the automatic stay."); *Unified People's Fed. Credit Union v. Yates (In re Yates)*, 332 B.R. 1,7 (B.A.P. 10ᵗʰ Cir. 2005) ("[T]he Credit Union violated the automatic stay by refusing to turn over the GMC after the Debtors filed for bankruptcy.").

Not only does the failure to return repossessed property violate the automatic stay, the secured creditor is under an obligation to return a repossessed vehicle to a Chapter 13 debtor once the debtor makes a demand for turnover. This is so because § 1303 of the Bankruptcy Code gives a Chapter 13 debtor the rights and powers of a trustee under § 363(b), which allows a debtor to "use, sell, or lease" property of the estate. Although the statutory right to request turnover of property under § 542(a) of the Bankruptcy Code is not a power reserved to the Chapter 13 debtor, the debtor cannot exercise the power to use property of the estate under § 363(b) if the secured creditor refuses to turn over possession of the property. *See Moffett*, 356 F.3d at 523 (affirming an order to turnover a vehicle to allow its use by the debtor); *Cardillo v. Andover Bank (In re Cardillo)*, 169 B.R. 8, 11 (Bankr. D.N.H. 1994) ("Since the [property is] property of the estate and subject to the 'use, sale or lease' by the debtor, they are subject to being turned over pursuant to section 542(a) . . . ."). When turnover of property is appropriate under § 542(a), the statute mandates that the creditor "shall deliver" the requested property.

In sum, WesBanco must turnover the Debtor's four trucks to him because: (1) the Debtor's trucks are property of his bankruptcy estate; (2) WesBanco's continued exercise of control over the vehicles violates that Bankruptcy Code's automatic stay; (3) the Debtor has the right to use property of the estate; and (4) the Debtor cannot use the repossessed trucks unless WesBanco turns them over.

**B.    Motion For Relief from the Automatic Stay**

WesBanco argues that it should not have to turnover the Debtor's trucks to him on the basis that the Debtor was about $40,000 in arrears on his loan payments before he filed bankruptcy and was unable to cure the default.

Relief from the automatic stay may be granted for "cause" under 11 U.S.C. § 362(d)(1), or when the debtor does not have any equity in the property and the property is not necessary to an effective reorganization. § 362(d)(2).

In this case, the Debtor testified that he needs the return of his trucks to earn money to perform under his proposed Chapter 13 plan. The Debtor also testified that jobs are available to him should his trucks be returned, and that payments from these jobs will be sufficient to allow the

4

Debtor to make his pre-confirmation adequate protection payments to WesBanco.  Without the return of his trucks, the Debtor has no possibility of reorganizing his financial affairs in Chapter 13.

Because the trucks are essential to the Debtor's performance under his proposed Chapter 13 plan, the court does not find a sufficient basis to lift the automatic stay under 11 U.S.C. § 362(d)(2). Likewise, because the Debtor has demonstrated that he will be able to obtain work that will enable him to make adequate protection payments to WesBanco pending a hearing on confirmation of his proposed Chapter 13 plan, the court does not find "cause" to lift the automatic stay under § 362(d)(1).

## C.    Adequate Protection

WesBanco contends that if it is required to turnover the four trucks to the Debtor, it should receive adequate protection payments of $1,291.66 based on the depreciation rate of the five motor vehicles and two dump trailers that are subject to its security interest.  The Debtor agrees that he must pay WesBanco adequate protection payments based on its request, but he contends that the proper amount of adequate protection is $873.00.  To the extent that this sum proves to be insufficient adequate protection, the Debtor offers WesBanco a lien in two unencumbered motor vehicles that, together, have a scheduled value of $10,000.

At the request of the secured party, when a debtor seeks to use secured collateral the court must condition the use of that collateral such that the secured creditor's interest in the collateral is adequately protected.  11 U.S.C. § 363(e).  Similarly, in Chapter 13 cases, the Bankruptcy Code requires a debtor to make pre-confirmation plan payments to a creditor secured in the debtor's personal property in an amount that is sufficient to provide that creditor with adequate protection of its interest.  § 1326(a)(3).  What constitutes adequate protection is defined by § 361 of the Bankruptcy Code, and it includes periodic cash payments to the creditor in an amount sufficient to compensate the creditor for the decrease in value of the secured creditor's interest in the property. § 361(1); *see also United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 370 (1988) (stating that when secured collateral is declining in value the secured creditor is entitled to cash payments or additional security in the amount of the decline).  Adequate protection also includes the grant of "an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property."  § 361(2).

5

In total, there are five motor vehicles and two dump trailers (including the four trucks in WesBanco's possession) that the Debtor seeks to use in his Chapter 13 case that are subject to WesBanco's security interest:

| Item | WesBanco's Valuation | Debtor's Valuation |
|---|---|---|
| 1996 Peterbilt 357 | $14,000 | $15,000 |
| 1996 Peterbilt 357 | $14,000 | $15,000 |
| 1996 Peterbilt 357 | $10,000 | $15,000 |
| 1987 Mack Truck | $3,000 | $3,000 |
| 1987 Chevy Truck | $2,500 | $2,500 |
| 1991 East Dump Trailer | $17,000 | $8,000 |
| 1991 East Dump Trailer | $17,000 | $8,000 |
| Total: | $77,500 | $66,500 |

WesBanco states that it had to estimate the value of the Debtor's 1991 East Dump Trailers because the Debtor has hidden that collateral to prevent its repossession; thus, WesBanco could not perform an accurate appraisal.  Using IRS Form 4562 for its general depreciation schedule, WesBanco asserts that all five vehicles and the two dump trailers have a five-year useful life and will depreciate at an annual rate of 20% in the first year.  Based on its valuation, the annual depreciation is $15,500, or $1,291.66 per month.

In contrast, the Debtor assigns a six-year life to all of the items except the 1987 Mack Truck and the 1987 Chevy Truck, to which he assigns a four-year life.  At the end of their useful lives, the Debtor further estimates that all seven items will have a combined residual value of $6,000; thus, only $60,500 in value is to be depreciated over the four or six-year period.  In the Debtor's view, monthly adequate protection payments to WesBanco should be no more than $873.00, and his proposed $1,000 monthly Chapter 13 plan payment to the trustee is more than sufficient to adequately protect WesBanco. To the extent such payments are not adequate to compensate WesBanco, the Debtor also offers it a security interest in unencumbered property consisting of a 1990 Peterbilt and a 1993 International Harvester, each valued at $5,000 in the Debtor's bankruptcy schedules.

For purposes of determining the amount of adequate protection WesBanco is entitled to receive, the court will use the valuation determinations made by the Debtor.  The Debtor's valuation of the three 1996 Peterbilt trucks is actually higher than that estimated by WesBano, the parties agree on the valuation of the 1987 Mack Truck and the 1987 Chevy Truck, and WesBanco admitted

6

that it could only guess as to the actual value of the two 1991 East Dump Trailers because it has not had the opportunity to inspect and appraise them.  In contrast, the Debtor is familiar with the condition of the trailers.

Similarly, for purposes of determining the amount of monthly adequate protection payable to WesBanco, the court will adopt the Debtor's adequate protection proposal.  Depreciating motor vehicles and/or equipment over a four-or-six year period is not unreasonable, and to the extent that WesBanco is not adequately protected by the periodic cash payments, the court will grant WesBanco a lien on the Debtor's 1990 Peterbilt and 1993 International Harvester.

### III. CONCLUSION

The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021 that grants the Debtor's motion to turn over property, that continues WesBanco's motion for relief from the automatic stay for a period of 60 days, and that grants WesBanco's request for adequate protection.